UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| SHARONDA MILLER, | ) |
|                                 Plaintiff, | ) |
| v. | )     No.: 21-cv-2189- JBM |
| PATRICK FREED, *et al.*, | ) |
|                               Defendants. | ) |

**MERIT REVIEW ORDER – AMENDED COMPLAINT**

Plaintiff, proceeding *pro se* and incarcerated at Logan Correctional Center, files an amended complaint pursuant to 42 U.S.C. § 1983, alleging violations of her constitutional rights at Decatur Correctional Center. (Doc. 33).

Plaintiff's amended complaint is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the amended complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The Court notes that Plaintiff characterized her amended complaint as arising under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (Doc. 33 at 1). However, Plaintiff names Defendants who are employed by the Illinois Department of Corrections, an agency of the State of Illinois. *See Bradford v. Kramer*, No. 15-01405, 2016 WL

1730603, at *2 (S.D. Ill. May 2, 2016) (*Bivens* is applied against federal actors while § 1983 is applied against state actors for violations of federal rights). Here, the Court reviews the amended complaint as arising under § 1983.

**MATERIAL FACTS**

Plaintiff alleges that she requested to be tested for COVID-19 because she was suffering from an itchy throat due to allergies, but she wanted to confirm that her symptoms were not attributable to COVID-19. Plaintiff claims that on November 23, 2020, Defendant Lieutenant Freed ordered her to be placed on the quarantine housing unit while she waited to be tested.

Plaintiff did not want to be placed on the quarantine housing unit, as she feared she would be exposed to COVID-19. She states that she vehemently told Nurse Oats, Correctional Officer Harder, Segreant Locke, Defendant Freed, and Lieutenant Parks that she did not have COVID-19 and was at high risk due to a compromised immune system. Nurse Oats informed her that it was protocol for inmates who were experiencing symptoms to be quarantined. Defendant Freed assured Plaintiff that she would be placed on an isolated unit/cell with her current cellmates. Upon her arrival, however, she was placed in a cell with another inmate who was suffering from the virus. When Plaintiff tried to refuse the placement, Harder called Defendant Freed, who allegedly told Harder to direct Plaintiff to stay on the quarantine housing unit. When Plaintiff refused, Harder called Locke, who told Plaintiff that she would be placed in segregation and issued an incident report if she did not comply.

The following morning, Plaintiff was told that her test results were negative. She was then placed in a housing unit isolated from everyone for the next fourteen days. Her request for additional testing was denied. Plaintiff submitted a grievance but received a disposition stating that staff members had to follow IDPH guidelines to prevent the spread of the virus. Plaintiff appealed

the denial of the grievance, stating that the protocols created a significant hardship and posed a substantial risk of harm.

On December 29, 2020, Nurse Fronville and Defendant Freed approached Plaintiff's cell door about her test results. Plaintiff states that Defendant Freed, who seemed hostile and belligerent, interjected into Plaintiff's conversation with Nurse Fronville. Plaintiff told Defendant Freed that she was not talking to him and turned her head. Defendant Freed then angrily thrust open the cell door, hitting Plaintiff with the door and uprooting her from the chair where she was sitting. Defendant Freed then roughly handcuffed Plaintiff and ordered her to put on a mask. When Plaintiff told him that she was unable to put a mask on while wearing handcuffs, Defendant Freed became enraged, yanked on her handcuffs, and continued to order Plaintiff to put on a mask. Plaintiff's cellmate attempted to assist by placing a mask on Plaintiff's face. Using the handcuffs as leverage, Defendant Freed allegedly threw Plaintiff into the sink, kneed her in the back, flung her into the bed, and slammed her on the floor while repeatedly screaming "put it on," "get down," and "stand up." (Doc. 33 at 3). After Plaintiff was on the ground, Defendant Freed attempted to force her to stand by using the handcuffs as leverage and pulling Plaintiff's arms over her head. Defendant Freed called Lieutenant Wilson and Major Snyder to help escort Plaintiff to the healthcare unit.

Plaintiff alleges that Defendant Officers Long, Stapleton, and Anderson were present in the doorway and had witnessed the entire incident but failed to intervene.

Defendant Freed subsequently issued Plaintiff an incident report, which she claims was "falsified." As a result of the incident report, Plaintiff alleges that she was sent to segregation, denied a fair hearing by the Adjustment Committee, and subsequently disciplined and transferred to a maximum security prison. Plaintiff states that she grieved this incident and the report. She

states that the report was later dispositioned as unfounded, and it was acknowledged that her due process rights had been violated during the incident hearing.

## ANALYSIS

First, the Court will address Plaintiff's allegations related to COVID-19. Plaintiff, who admits that she requested to be tested because she was suffering from an "itchy throat due to allergies," does not believe that the facility should have placed her on the quarantine housing unit while waiting for her test results or placed her in isolation for fourteen days thereafter. (Doc. 33 at 1). Plaintiff has not articulated a constitutional violation based on these facts because she failed to allege that she suffered some type of harm. Plaintiff does not claim that she ever had the virus; she faces no risk of future harm; and she no longer resides at the facility. *See Henry v. Deshler*, 2021 WL 2838400, at *2 (7th Cir. 2021) ("claim of deliberate indifference cannot be based on a risk that never came to pass."); *Lee v. Chak*, 2022 WL 1451666, at *2-3 (W.D. Wis. May 9, 2022) (although inmate was housed with cellmate who tested positive for COVID, plaintiff failed to allege he suffered any harm); *Shaw v. Kemper*, 2021 WL 5493937, at *4 (E.D. Wis. Nov. 23, 2021) (Plaintiff fails to state a claim based on exposure to COVID which did not result in any injury); *see also Lee v. Doe*, 2022 WL 204355, at *4 (S.D.N.Y. Jan. 24, 2022) ("Courts have routinely dismissed claims such as Plaintiff's for lack of standing based on the absence of injury in fact.")(listing cases); *Balas v. Stanish*, 2021 WL 5500512, at *4 (M.D. Pa. Nov. 23, 2021) ("Missing here is any allegation of actual injury attributed to Defendants' alleged placing of [plaintiff] in proximity with infected inmates.")(listing cases). Therefore, this claim is DISMISSED with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A for failure to state a claim upon which relief can be granted. The Court finds that any amendment would be futile as Plaintiff cannot allege a claim until § 1983 based on these facts.

Next, the Court examines Plaintiff's excessive force claim against Defendant Freed. Plaintiff pleads that, without provocation, Defendant Freed threw her into the sink, kneed her in the back, flung her into the bed, slammed her on the floor, and attempted to force her to stand up by using her handcuffs as leverage and pulling her arms over her head. This is sufficient to state an excessive force claim where the relevant inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). While Plaintiff does not allege a particular injury, if no force is necessary, even a *de minimis* injury may be actionable. *Reid v. Melvin*, 695 F. App'x 982, 983-84 (7th Cir. 2017); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (a plaintiff may state a claim even with minimal injury if defendant used force maliciously).

Plaintiff also states a claim under the Eighth Amendment against Defendants Long, Stapleton, and Anderson for failing to intervene. *See Harper v. Albert,* 400 F.3d 1052, 1064 (7th Cir. 2005). A failure to intervene claim requires evidence of the following: (i) defendant knew of the unconstitutional conduct; (ii) defendant had a realistic opportunity to prevent the harm; (iii) defendant failed to take reasonable steps to prevent the harm; and (iv) plaintiff suffered harm as a result. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Plaintiff alleges that Defendants Long, Stapleton, and Anderson stood in the doorway, observed the entire incident unfold, and did not intervene. *See Bey v. Pollard*, 2014 WL 5460439, at *4 (E.D. Wis. Oct. 27, 2014). "The Seventh Circuit has recognized that where an officer has a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's right but fails to do so, he may be held liable." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009).

In its prior merit review of Plaintiff's initial complaint, the Court found that Plaintiff had successfully pled that Defendant Freed purposefully placed her with a COVID-infected inmate and

5

exerted excessive force against her in retaliation for filing a grievance against him. (Doc. 10 at 4). Plaintiff did not include these allegations in her amended complaint, however. (Doc. 33). Therefore, the First Amendment retaliation claim against Defendant Freed is DISMISSED.

The Court now considers Plaintiff's Fourteenth Amendment due process claims. It is well-established that a prisoner is entitled to due process where there is a protected liberty or property interest at stake. *Domka v. Portage Cnty.*, 523 F.3d 776, 779-80 (7th Cir. 2008). Plaintiff pleads that Defendant Freed filed a false incident report against her; that she was denied a fair hearing before the Adjustment Committee; and that she was sent to segregation and subsequently transferred to a maximum security prison. She states that the incident report was later deemed to have been unfounded.

A procedural due process claim requires a two-part analysis: whether the Plaintiff was deprived of a protected liberty or property interest, and if so, what process was due. *Hamlin v. Vaudenberg*, 95 F.3d 580, 584 (7th Cir. 1996). In other words, if a constitutional right is identified, then procedural due process must be provided. *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1020 (7th Cir. 2000). A protected liberty interest is implicated if, as a result of the disciplinary conviction, the prisoner's sentence is increased, as in the loss of good time credit, or where she is subjected to "atypical and significant hardship… in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995); *Thomas v. Ramos*, 130 F.3d 754, 760-62 (7th Cir. 1997). Merely placing a prisoner in segregation does not amount to an atypical or significant change in circumstances. *Lekas v. Briley*, 405 F.3d 602, 607-11 (7th Cir. 2005); *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (liberty interest *may* arise if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh") (citing *Whitford v. Boglino*, 63 F.3d 527, 533 (7th Cir. 1995)). Moreover, a

disciplinary transfer with no loss of good-time credit does not trigger due process protections. *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) (segregation and transfer does not implicate constitutional interest). "A prisoner has no due process right to be housed in any particular facility." *Whitford*, 63 F.3d at 532 (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976)).

Here, Plaintiff does not allege a loss of good time credits or plead that she was held under atypical conditions in segregation. She also does not plead how long she was held in segregation or whether she lost certain privileges. This is not enough to state a due process claim. *See Lekas*, 405 F.3d at 613 (90 days in segregation with loss of contact visits, loss of telephone and commissary privileges, and the inability to participate in programs did not implicate protected liberty interests); *see also Williams*, 849 F. App'x at 156 (lengthy period of segregation and harsh conditions may violate due process). Plaintiff's due process claim is DISMISSED with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A. The Court finds that any amendment would be futile, as this is Plaintiff's second unsuccessful attempt to plead a due process claim.

**Plaintiff's Motion to Request Counsel**

Plaintiff also files a Motion to Request Counsel. (Doc. 30). Plaintiff does not have a constitutional or statutory right to counsel in this case. *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007. When evaluating a motion for the recruitment of pro bono counsel, the court "should engage in a two-step inquiry: '(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Watts v. Kidman*, 42 F.4th 755, 760 (7th Cir. 2022) (quoting *Pruitt*, 503 F.3d at 655). The district court may also consider "the perceived merits

of–or likelihood of success on–an indigent plaintiff's claims in its decision whether to allocate scare pro bono counsel resources to the case before it." *Watts*, 42 F.4th at 764.

First, the Court must determine if Plaintiff made a reasonable attempt to secure counsel on her own, or conversely, if she has been precluded from doing so. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). This typically requires submitting letters from several attorneys declining assistance. *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). Plaintiff states that she sought representation from six law firms, but she did not receive a response. Therefore, the Court finds that Plaintiff has made reasonable efforts to find counsel.

The next inquiry is "whether the difficulty of the case–factually and legally–exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury [herself]." *Pruitt*, 503 F.3d at 655. "[T]he district court must consider both halves of this equation—the difficulty of the case and the competence of the litigant." *Bracey v. Grondin*, 712 F.3d 1012, 1016-17 (7th Cir. 2013). Relevant factors as to competency include, but are not limited to, a plaintiff's literacy, education, litigation experience, communication skills, psychological history, intellectual capacity, physical and mental health, and ability to conduct discovery. *Id*. at n. 3 (citing *Pruitt*, 503 F.3d at 655). The inquiry is individualized, taking all the relevant facts into consideration, including the stage of litigation. *Navejar v. Igiola*, 718 F.3d 692, 696 (7th Cir. 2013). Plaintiff's amended complaint and her other pleadings are coherent and detailed. Her claims involving the alleged use of excessive force and failure to intervene are not complex and involve issues of which she has direct, personal knowledge. As a result, the Court finds that Plaintiff appears competent to litigate the case herself, especially at this relatively early stage of the litigation process. Plaintiff's request for pro bono counsel is DENIED.

**Plaintiff's Motion to Compel**

Plaintiff files a Motion to Compel under Federal Rule of Civil Procedure 37(a), asking the Court to order Defendant Freed to provide information in response to her discovery request for "records of any prior complaints or disciplinary actions" against Defendant. (Doc. 39 at 5). Plaintiff argues that "[t]his information is relevant for the purpose of showing hostility towards outspoken prisoners," and, because retaliation has been alleged in this case, Defendant Freed's prior bad acts are relevant. *Id.* at 1-2.

In response, Defendant Freed stated that the request was not proportional to the needs of this case pursuant to Rule 26, and prior disciplinary action was irrelevant to whether Plaintiff's rights were violated in this case. *See Verser v. Ruiz*, 2009 WL 3381009, at *3 (C.D. Ill. Oct. 14, 2009) (noting that allegations made by other prisoners that Defendants engaged in separate instances of excessive force have no relation to whether they engaged in excessive force in the present case). (Doc. 39 at 5).

Defendant further objected to the extent that Plaintiff was seeking information regarding past bad acts because this evidence is prohibited by Federal Rule of Evidence 404(b)(1). (Doc. 39 at 6). Additionally, Defendant asserted that personnel files of State employees are confidential and not available for public inspection. 80 Ill. Adm. Code § 304.40(a). *Id.*

As stated above, Plaintiff's retaliation claim against Defendant Freed has been dismissed due to Plaintiff's failure to include this claim in her amended complaint. Additionally, it appears that Defendant Freed has not been disciplined for any action related to Plaintiff's case or for any action related to his treatment of other inmates. *See id.* Even if this information was relevant, there is nothing for Defendant Freed to provide in response to Plaintiff's discovery request. Therefore, Plaintiff's Motion to Compel is DENIED.

**IT IS THEREFORE ORDERED:**

1.  This case shall proceed solely on the excessive force claim against Defendant Freed and the failure to intervene claim against Defendants Long, Anderson, and Stapleton. All other claims in the amended complaint are DISMISSED with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A. Any claim not identified will not be included in the case, except in the Court's discretion upon motion by a party for good cause shown, or by leave of court pursuant to Federal Rule of Civil Procedure 15.

2.  As Defendants Freed, Long, Anderson, and Stapleton have already appeared and answered, no waivers need to be issued. (Docs. 21 and 24).

3.  Plaintiff's Motion to Request Counsel [30] and Motion to Compel Discovery [39] are DENIED for the reasons stated above.

4.  Pursuant to the Court's Scheduling Order, discovery closes on November 11, 2022, and summary judgment motions are due by December 12, 2022. (Doc. 25).

5.  Plaintiff shall immediately inform the Court, in writing, of any change in her mailing address and phone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

 

 8/29/2022                                                                         s/Joe Billy McDade
ENTERED                                                           JOE BILLY McDADE
                                                                UNITED STATES DISTRICT JUDGE